Argued and submitted February 8, affirmed April 20, 2016

DEUTSCHE BANK TRUST COMPANY AMERICAS
AS TRUSTEE FOR RALI 2007-QA3,
its successors in interest and/or assigns,
*Plaintiff-Respondent,*

*v.*

James A. WALMSLEY,
aka James Alan Walmsley, aka James Walmsley,
aka Jim Alan Walmsley, aka Jim A. Walmsley,
aka Jim Walmsley,
*Defendant-Appellant,*

*and*

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
solely as nominee for Hyperion Capital Group, LLC;
United States of America;
Cedar Brook Homes Homeowners Association, Inc.;
Occupants of the Premises;
and the Real Property located at
245 Red Cedar Lane, Cave Junction, OR 97253,
*Defendants.*

Josephine County Circuit Court
13CV0125; A156569

374 P3d 937

Richard L. Billin argued the cause and filed the briefs for appellant.

Emilie K. Edling argued the cause for respondent. With her on the brief was Houser & Allison, APC.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

SHORR, J.

**SHORR, J.**

Defendant James Walmsley appeals a general judgment of judicial foreclosure of a trust deed securing a promissory note, which the trial court entered after granting plaintiff's motion for summary judgment. On appeal, defendant assigns error to the trial court's grant of summary judgment, contending that there were genuine issues of material fact as to plaintiff's right to enforce the note on which defendant defaulted.

As explained below, we conclude that the trial court did not err. Plaintiff was entitled to summary judgment because it established the requisites for judicial foreclosure of a trust deed, including that it was the "holder" of the note, and was therefore entitled to enforce the note in the event that defendant defaulted on it, which undisputedly occurred here. Beyond that, defendant failed to raise any issue of fact which, if true, would preclude judicial foreclosure. Contrary to defendant's contentions, plaintiff was not required to prove ownership of the note in order to enforce it through judicial foreclosure. Furthermore, we reject defendant's contentions that claimed discrepancies relating to plaintiff's compliance with separate contracts pertaining to the securitization of the loan—to which defendant was neither a party nor a beneficiary—negate plaintiff's ability to enforce the note through judicial foreclosure, once the requisites for judicial foreclosure, including plaintiff's status as the holder of the note, had been established. Accordingly, we affirm.

In reviewing a ruling on summary judgment, we view the record in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We state the underlying facts, which are uncontroverted, in accordance with that standard.

In 2006, defendant financed the purchase of a residential property at 245 Red Cedar Lane in Cave Junction with a $169,600 loan secured by a promissory note and a deed of trust recorded against the property. In 2011,

defendant defaulted on the note by failing to make the required monthly payments. Plaintiff, a mortgage-backed trust that acquired the note from a company that obtained it from the original lender, initiated a judicial foreclosure action in 2013.

Plaintiff filed a motion for summary judgment, asserting that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law on all claims and defenses. In its filings, plaintiff established that: (1) plaintiff was the holder of the note and the beneficiary of the trust deed, and plaintiff's attorney had the original note in his office; (2) defendant had executed the trust deed to the property and was obliged under the terms of the loan to make monthly payments to plaintiff; and (3) defendant had defaulted by failing to make payments from July 2011 onward.

Defendant opposed summary judgment, contending that several issues of fact precluded it. Defendant argued, among other things, that plaintiff's right to enforce the note was called into question by three issues relating to the pooling and service agreements (PSA) governing the trust pool that the note had been bundled into before the foreclosure. Defendant, as the borrower, had no involvement in the securitization[1] of the loan, as he was neither party to nor beneficiary of the trust. Nonetheless, defendant claimed that several potential technical deficiencies in plaintiff's compliance with the rules governing the trust could render the note unenforceable by plaintiff.

First, defendant contended that, under the trust prospectus and PSAs, the note had to be transferred into the trust before the date that the trust closed. According to defendant, under New York law, which governed the trust pool, a note that did not comply with that condition would be void or voidable. Based on those contentions, defendant theorized that the note might be void because "there is no indication that the loan at issue was transferred into the

---

[1] "Securitize" means "to convert assets into negotiable securities for resale in the financial market." *Black's Law Dictionary* 1475 (9th ed 2009). As described below, we employ that term here specifically to describe the bundling of mortgage loans into mortgage-backed securities.

trust before it closed." Second, defendant contended that the trust PSA required "the issuance of the Initial Certification" in order for the note to be valid, and theorized, again, that, because plaintiff had not provided such documentation, an "issue of fact exists regarding the validity of the loan at issue." Third, defendant contended that, because "the PSA requires an unbroken chain of title," and because "the copy of the note provided *** does not include an endorsement by Residential Credit Loans, Inc." (the trust depositor), "an issue of fact remains whether plaintiff can establish th[e] necessary unbroken chain." Thus, all of defendant's arguments were premised upon the notion that potential noncompliance with the contracts governing the independent trust that the note had been pooled into could create a material issue of fact sufficient to preclude plaintiff from judicially foreclosing on the note.

In addition, defendant advanced a theory derived from plaintiff's leveraging of the trust pool through three swap agreements, under which counterparties agreed to pay a set interest rate to plaintiff in exchange for payments' generated by the trust pool. According to defendant, those arrangements "establish the possibility that the certificate holders *** have been paid by other entities," thereby creating an issue of fact "regarding the effect these agreements have on [plaintiff's] obligations under ORS 86.720"—the statute requiring reconveyance of a trust deed upon performance of the obligation secured by the trust deed. In other words, or as nearly as we can tell, defendant was suggesting that the mere fact that plaintiff had separately traded its own interest in the proceeds of the loan payments for a set interest rate under the swap agreements might either satisfy or nullify defendant's own obligation to make monthly payments on the loan, notwithstanding his admitted failure to fulfill that obligation.

In response, plaintiff maintained that all of those issues were entirely inapposite to the judicial foreclosure action, that defendant's legal and factual theories were unsubstantiated by evidence or authority, and that defendant lacked standing as to any issues involving the trust pool PSAs and the swap agreements.

After a hearing on those issues, the trial court granted summary judgment in favor of plaintiff, concluding that no genuine issue of material fact existed and that plaintiff prevailed as a matter of law on all claims and defenses. It rejected defendant's arguments concerning the PSAs and swap agreements, reasoning that, because "defendant is without standing to challenge plaintiff's compliance with the pooling service agreements and/or the swap agreement * * * defendant has not raised issues preventing summary judgment in response to the plaintiff's basic assertion of a legitimate debt that has not been paid." The trial court then entered a general judgment of foreclosure against defendant.

On appeal, defendant assigns error to the trial court's grant of summary judgment in favor of plaintiff, making essentially the same arguments made before the trial court, arguing that various claimed defects in plaintiff's compliance with the trust PSAs raised material issues of fact concerning plaintiff's right to enforce the note. Defendant also argues, as he did below, that the existence of the swap agreements could affect plaintiff's "right and ability" to foreclose on the note. We write only to highlight that those arguments are unavailing because they are immaterial in the context of a judicial foreclosure action.

A trust deed securing the sale of property is deemed a mortgage and may be judicially foreclosed in the same manner as a mortgage. ORS 86.710 - 86.715; *Kerr v. Miller*, 159 Or App 613, 621, 977 P2d 438, *rev den*, 329 Or 287 (1999). "A fundamental principle in mortgage law holds that a foreclosing party must have the power to enforce the underlying note." *Brandrup v. ReconTrust Co.*, 353 Or 668, 688, 303 P3d 301 (2013) (noting so in nonjudicial foreclosure case, and citing *United States Nat. Bank v. Holton*, 99 Or 419, 428-29, 195 P 823 (1921), which stated the same principle in a judicial foreclosure case). Relatedly, "[i]t has always been the law of this state that the assignment of the note carries the mortgage" or trust deed. *United States Nat. Bank*, 99 Or at 429. In the context of judicial foreclosure on a negotiable instrument such as a promissory note secured by a trust deed or mortgage, the power to enforce the underlying note

is established by ORS 73.0301 (UCC § 3-301). That statute provides:

> "'Person entitled to enforce' an instrument means *the holder of the instrument*, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to ORS 73.0309 or 73.0418 (4). *A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.*"

(Emphases added.)

Our comments are limited to what a party must demonstrate to be entitled to enforce an instrument as the instrument's "holder" in a judicial foreclosure. Under ORS 71.2010(2)(u)(A), "holder" means "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Thus, to be entitled to enforce a negotiable instrument as a holder, a party must simply demonstrate that it is in possession of the instrument and that the instrument is payable either to the bearer or to the party itself.[2]

Here, plaintiff proved that it was the "holder" of the note, and therefore entitled to enforce it in the event of a default, by establishing that it possessed the note at the time of the foreclosure action and that the note was indorsed to plaintiff. That is all plaintiff was required to prove with respect to its right to enforce the note, and defendant presented no evidence from which a reasonable juror could conclude otherwise.

---

[2] We note that it is uncontroverted that the note here is a "negotiable instrument." It contained an unconditional promise to pay a fixed amount of money at a definite time, was payable to order at the time it first came into plaintiff's possession, and contained, outside of a pledge of collateral, no "other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money." ORS 73.0104 (setting out elements of a negotiable instrument). Here, the note was originally payable to a specified person (the original lender), and later indorsed to plaintiff. As a result, the note was "payable to order." *See* ORS 73.0205 (stating that, when specially indorsed, an instrument becomes payable to the identified person and "may be negotiated only by the indorsement of that person"); ORS 73.0109(2) (stating that "[a] promise or order that is not payable to bearer is payable to order if it is payable to the order of an identified person or to an identified person or order").

Plaintiff was not required to prove ownership of the note in order to be entitled to enforce it under these circumstances. To the contrary, ORS 73.0301 provides that a person may be entitled to enforce an instrument "even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *See Niday v. GMAC Mortgage, LLC*, 353 Or 648, 665 n 8, 302 P3d 444 (2013) ("If a note is negotiable, the 'party entitled to enforce the note' *** under ORS 73.0301 may not be the same person as the owner of the note, that is, the party entitled to the economic benefits of the note."). Nor was plaintiff required to affirmatively prove that it had fully complied with separate PSA contractual obligations that are independent of the obligations of either party under the note. Putting aside for a moment the speculative nature of defendant's allegations relating to the PSAs, even if defendant had provided evidence of noncompliance, that would not affect plaintiff's right to enforce the note under ORS 73.0301 in these circumstances. Defendant's argument that the existence of the swap agreements created an issue of material fact concerning plaintiff's right or ability to enforce the note is similarly unavailing as immaterial. Plaintiff's own contractual obligations and privileges under the trust PSAs and the swap agreements have no bearing on plaintiff's right to enforce the note through judicial foreclosure as the holder of the note under ORS 73.0301.

Accordingly, plaintiff is entitled to enforce the note and the deed of trust, and demonstrated that it was entitled to summary judgment as a matter of law. Plaintiff produced evidence that it is entitled to enforce the note as its holder, that defendant was in default on the note, and that plaintiff had the right to foreclose in that event. Because defendant failed to raise any genuine issue of material fact bearing on plaintiff's right to judicial foreclosure, the trial court did not err in granting plaintiff's motion for summary judgment.

Affirmed.