Argued and submitted December 23, 2019, affirmed April 22, 2020

THE BANK OF NEW YORK MELLON,
fka The Bank of New York as Successor in Interest
to JPMorgan Chase Bank, National Association,
as Trustee for C-Bass Mortgage Loan Asset-Backed
Certificates, Series 2003-CB4, through their loan
servicing agent, Ocwen Loan Servicing, LLC,
*Plaintiff-Respondent,*

*v.*

Benjamin S. BRANTINGHAM
and Linda A. Brantingham,
*Defendants-Appellants,*

*and*

DEPARTMENT OF THE TREASURY et al.,
*Defendants.*

Clackamas County Circuit Court
CV12110380; A166405

464 P3d 1143

In this trust deed foreclosure action, the Brantinghams (defendants) appeal from the trial court's ruling in which it found that The Bank of New York Mellon (plaintiff) was the holder of a promissory note and entitled to its possession. On appeal, defendants argue that plaintiff was not entitled to enforce the note, which had been indorsed and transferred several times. Plaintiff argues that, as the proper holder of the note, plaintiff was entitled to enforce it. *Held*: The trial court did not err. There was sufficient evidence to support the trial court's inference that plaintiff was the holder of the note. Notably, plaintiff was in possession of the note under a properly made "blank endorsement," which imbues a transferee with holder status.

Affirmed.

Katherine E. Weber, Judge.

Charles R. Markley argued the cause for appellants. Also on the briefs was Sylvan Law Center, P.C.

Emilie K. Edling argued the cause for respondent. Also on the brief was Houser & Allison, APC.

Before Lagesen, Presiding Judge, and Powers, Judge, and Brewer, Senior Judge.

BREWER, S. J.

Affirmed.

**BREWER, S. J.**

This case presents yet another challenge to the right of a plaintiff in a trust deed foreclosure action to enforce a note and trust deed that were securitized and transferred after their inception. After a trial on the merits, the trial court entered judgment for plaintiff in this case. Although the overarching legal principles are well established, we write to further address the dimensions of a debtor's ability to challenge a transferee's status as a person entitled to enforce a note and trust deed.

## STANDARD OF REVIEW

Judicial foreclosure is an equitable proceeding that we may exercise our discretion to review *de novo*. *Blunier v. Staggs*, 250 Or App 215, 217, 279 P3d 826 (2012); ORS 19.415(3). We decline to do that here because neither party has asked us to take *de novo* review, and this is not an exceptional case justifying such review. ORAP 5.40(8)(c). Thus, we review the trial court's findings to determine whether there is any evidence in the record to support them, and its legal conclusions for legal error. *See, e.g.*, *Frontgate Properties, LLC v. Bennett*, 261 Or App 810, 812, 324 P3d 483, *rev den*, 356 Or 400 (2014). In so doing, we view the evidence, as supported by permissible inferences, in the light most favorable to the court's decision and assess whether, when so viewed, the record was legally sufficient to permit that outcome. *Bank of New York Mellon v. Delaney*, 299 Or App 1, 3, 455 P3d 42 (2019), *rev den*, 366 Or 292 (2020).

## FACTS AND PROCEDURAL HISTORY

In December 1997, defendants Brantinghams executed a promissory note (the note) and deed of trust (the trust deed), where they agreed to make monthly payments on a loan (the loan) for $158,250.00, secured by property in Clackamas County, Oregon. The note was indorsed and transferred several times when, pursuant to a Pooling Service Agreement (PSA) executed in August 2003, the loan was securitized[1] and made part of the C-Bass Mortgage

---

[1]  "Most residential mortgage loans in the United States *** are securitized, rather than held in portfolio as whole loans by the original lender. Securitized loans are pooled in a separate legal trust created for that purpose, which

Loan Asset-Backed Certificates, Series 2003-CB4 Trust, with JPMorgan Chase Bank (JPMorgan) serving as trustee of the Trust and Litton Loan Servicing, LLC (Litton) acting as servicer for the loans in the trust. The PSA recited that the seller delivered to the trustee or its designated custodian the original mortgage notes for each loan transferred to the trust. From the inception of the trust in 2003, plaintiff, then known as Bank of New York, was the custodian of the collateral files for the loans that were included in the trust.

After nine years, defendants defaulted on the loan and Litton eventually initiated nonjudicial foreclosure efforts. In 2011, Litton merged with Ocwen Loan Servicing, LLC (Ocwen), and Ocwen pursued a judicial foreclosure in 2012. In 2014, plaintiff's internal custodian delivered the collateral file—which included the original note—to Ocwen for purposes of this litigation.

At trial, there was no dispute that the note was a valid instrument and that the Brantinghams were in default on the loan. The only issue concerned the legal requirements that plaintiff must satisfy to enforce the note.

The evidence at trial showed that the note contained the following original, "wet-ink" indorsements: (1) From Pacific Thrift and Loan Company, the original lender, to PacificAmerica Money Center, Inc. (dated January 22, 1998); (2) From PacificAmerica Money Center, Inc. to PacificAmerica Securities, Inc. (dated January 22, 1998); (3) From PacificAmerica Securities, Inc. to "Deutsche Bank National Trust Company, as Trustee FKA Bankers Trust Company of California NA, as Trustee Pursuant to an Indenture Dated as of March 1, 1998 relating to the Pacificamerica Home Equity Loan Asset-Backed Notes, Series

then issues mortgage-backed securities (MBS) and remits ("passes through") mortgage payments to the MBS investors, net of mortgage servicing fees and other expenses. These MBS are actively traded and held by a range of fixed income investors."

Federal Housing Finance Agency, *Examination Manual—Public*, July 2013, Securitizations at 1, *available at* https://www.fhfa.gov/SupervisionRegulation/Documents/Securitizations_Module_Final_Version_1.0_508.pdf (accessed Apr 14, 2020).

1998-1" ("Deutsche Bank as Trustee") (dated January 22, 1998); (4) From Deutsche Bank as Trustee to blank, which was undated but was in existence by at least April 19, 2010, when it was filed with a claim in a bankruptcy proceeding that defendants initiated;[2] (5) From Deutsche Bank as Trustee to The Bank of New York Mellon F/K/A The Bank of New York as Successor in Interest to JPMorgan Chase Bank, National Association, as Trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series 2003-CB4, also undated but created while the loan was being serviced by Ocwen, which began in 2011.

At trial, Kevin Flannigan, Ocwen's loan analyst, identified Ocwen and Litton business records, which were created at the time administration of the loan was transferred to each servicer. Flannigan authenticated the PSA that created the trust as an Ocwen business record. The PSA specified which loans would be transferred into the trust and described the parties to the agreement and their respective roles, including Litton as servicer and JPMorgan as trustee.

Through the testimony of Philip Reinle, an officer in plaintiff's corporate trust department, plaintiff introduced contracts showing that it had acquired all the corporate trust business of JPMorgan in a large transaction that resulted in the transfer of the trust duties under the PSA to plaintiff. One of the contracts, a "Purchase and Assumption Agreement" between plaintiff and JPMorgan dated April 7, 2006, memorialized plaintiff's acquisition of the corporate trust business from JPMorgan. Article 2, Section 2.1(3) of that agreement specifically provided that, among the assets transferred, were a number of trusts that were further delineated in a Schedule 2.1A3 to the Agreement. The C-Bass Mortgage Loan Asset-Backed Certificates, Series 2003-CB4 Trust was specifically identified in Schedule 2.1A3. Reinle confirmed through various documents that defendants' loan had been transferred to the trust.

---

[2] That blank indorsement apparently was used to create a special indorsement sometime after July 1, 2008, when it was stamped with the name of Bank of New York Mellon, the name that plaintiff adopted after that date. Plaintiff's former name was Bank of New York.

At trial, defendants asserted that, because Deutsche Bank had assigned the note and trust deed to JPMorgan in 2003, it had no authority to further indorse the note thereafter, either in blank or by special indorsement. In making that argument, defendants acknowledged and relied on a 2003 assignment by Deutsche Bank of the deed of trust, as well as the underlying note. Defendants further observed that a copy of the blank indorsement on which plaintiff relied had been converted to a special indorsement to plaintiff sometime after 2008, when plaintiff changed its name to Bank of New York Mellon. Defendants also adduced evidence that an additional allonge[3] purporting to transfer the note from Deutsche Bank to plaintiff was not prepared until at least February 19, 2014. Defendants argued that the recital in that allonge, "present owner and holder: Deutsche Bank National Trust Company as Trustee[,]" was inaccurate because the note already had been assigned to JPMorgan by that date.[4] Based on those points, defendants argued that both the "converted" blank indorsement and the 2014 special indorsement were invalid because Deutsche Bank lacked authority to further indorse the note after having previously transferred it to JPMorgan.

At the conclusion of trial, the trial court ruled for plaintiff, expressly determining that plaintiff was the holder of the note and was entitled to its possession. Defendants appealed from the ensuing judgment for plaintiff on the note that also foreclosed the trust deed.

## ISSUE ON APPEAL

On appeal, defendants acknowledge that they are "in default on the subject loan." However, they assert that,

---

[3] "'An allonge is a slip of paper attached to a negotiable instrument for the purpose of receiving an endorsement.'" *Ocwen Loan Servicing, LLC v. Segebrecht*, 359 Wis 2d 676, ¶ 3 n 2, 859 NW2d 629 (Wis Ct App 2014), 2014 WL 7270524 (quoting *PNC Bank, N. A. v. Bierbrauer*, 346 Wis 2d 1, 5 n 2, 827 NW2d 124 2013 WI App 11 (Wis Ct App 2012)). "The practice of multiple [e]ndorsements which accompanied the growth in commerce eventually led to the acceptance of the use of allonges." *Adams v. Madison Realty & Dev., Inc.*, 853 F2d 163, 167 (3d Cir 1988).

[4] Defendants also made various procedural and discovery-related objections to plaintiff's evidence, which they continue to urge on appeal. We reject those arguments without discussion.

"if there is a foreclosure, it must be conducted by the proper party: the holder of the Note." (Emphasis omitted.) Reiterating their arguments before the trial court, defendants argue that plaintiff failed to prove that it was entitled to enforce the note.

## DISCUSSION

Much of the parties' disagreement centers on the import of our prior decisions, most prominently *Deutsche Bank Trust Co. Americas v. Walmsley*, 277 Or App 690, 374 P3d 937 (2016). As pertinent here, in *Walmsley*, we held:

> "In the context of judicial foreclosure on a negotiable instrument such as a promissory note secured by a trust deed or mortgage, the power to enforce the underlying note is established by ORS 73.0301 (UCC § 3-301). That statute provides:
>
> > "'Person entitled to enforce' an instrument means *the holder of the instrument*, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to ORS 73.0309 or 73.0418(4). *A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument*."

*Id.* at 695-96 (emphases in *Walmsley*).

We further noted that ORS 71.2010(2)(u)(A) defines a "holder" as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* at 696 (alteration in original; internal quotation marks omitted); ORS 71.2010(2)(u)(A). Thus, we concluded, "[T]o be entitled to enforce a negotiable instrument as a holder, a party must simply demonstrate that it is in possession of the instrument and that the instrument is payable either to the bearer or to the party itself." *Id.* We ultimately concluded that the "plaintiff proved that it was the 'holder' of the note, and therefore entitled to enforce it in the event of a default, by establishing that it possessed the note at the time of the foreclosure action and that the note was indorsed to plaintiff." *Id.* We held:

"That is all plaintiff was required to prove with respect to its right to enforce the note, and defendant presented no evidence from which a reasonable juror could conclude otherwise."

*Id*.

We further noted that the plaintiff was not required to prove ownership of the note. *Id.* at 697; *see Niday v. GMAC Mortgage, LLC*, 353 Or 648, 665 n 8, 302 P3d 444 (2013) ("If a note is negotiable, the 'party entitled to enforce the note' *** under ORS 73.0301 may not be the same person as the owner of the note, that is, the party entitled to the economic benefits of the note."). Finally, we rejected the defendant's argument that the plaintiff had breached separate contractual obligations that were independent of the obligations of either party under the note and that had "no bearing on plaintiff's right to enforce the note through judicial foreclosure as the holder of the note under ORS 73.0301." *Walmsley*, 277 Or App at 697.

Defendants attempt to distinguish *Walmsley* by arguing that "there was no dispute [in that case] that the plaintiff was the 'real party in interest.'" Defendants point out that, in *Walmsley*, we ultimately rejected the defendant's reliance on independent agreements that did not defeat the plaintiff's status as the holder of the note. Here, in contrast, defendants assert that Deutsche Bank's right to enforce the note against defendants ended when it assigned the note to JPMorgan in 2003. As defendants see things, when Deutsche Bank thereafter purported to transfer—for a second time—the same note to plaintiff, Deutsche Bank had no interest in the note and thus transferred no right or interest to plaintiff.

In support of their arguments, defendants rely on ORS 73.0203, which provides, in part:

"(1)   An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

"(2)   Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee *any right of*

*the transferor* to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee has engaged in fraud or illegality affecting the instrument."

(Emphasis added.)

Defendants point out that Official Comment 2 to UCC section 3-203[5] states in part that "[b]ecause the transferee's rights are derivative of the transferor's rights, those rights must be proved." From this, defendants reason that Deutsche Bank's right to transfer the note ended when it assigned the note to JPMorgan and that it had no further right to transfer the note by indorsement thereafter.

Plaintiff replies that *Walmsley* and its progeny, *Nationstar Mortgage, LLC v. Niday*, 283 Or App 663, 389 P3d 1176 (2016), *rev den*, 361 Or 671 (2017), and *Nationstar Mortgage, LLC v. Peper*, 278 Or App 594, 377 P3d 678 (2016), "all considered challenges by borrowers asserting that the foreclosing plaintiff was not the real party in interest *** or had never received a transfer of the note." In particular, plaintiff correctly notes that, in *Walmsley*, the defendant,

> "explicitly challenged the foreclosing plaintiff's ownership of the note, arguing that there was evidence that the note and deed of trust were not properly transferred to the Plaintiff's Trust, and that the note and deed of trust were allegedly transferred to the Trust by entities which did not have standing to assign such instruments and that Plaintiff never did become the holder of the note."

(Internal quotation marks and brackets omitted.) Plaintiff notes that the defendant in *Walmsley* argued that "there was a broken chain of title that created the possibility that some other entity is the owner and holder of the note."

---

[5] UCC section 3-203 corresponds to ORS 73.0203.

"Although the Official Comments to the UCC lack the force of law, they are instructive, because the legislature took note of them at the time of adoption, they are consistent with the structure of the UCC, and the purpose of the Official Comments is to promote uniform construction of the UCC."

*Kelly v. Olinger Travel Homes, Inc.*, 200 Or App 635, 644 n 5, 117 P3d 282 (2005), *rev den*, 340 Or 308 (2006).

(Internal quotation marks omitted.) We rejected those arguments, holding that the plaintiff proved it was the holder of the note and that it was not necessary for the plaintiff also to prove that it was the owner of the note. *Walmsley*, 277 Or App at 696-97.

Similarly, in *Peper*, the defendant argued that the plaintiff was "not the real party in interest and [did] not have a perfected security interest in the alleged real property, asserting an Assignment of Deed of Trust document was invalid."[6] We affirmed summary judgment for the plaintiff, noting that "under the Uniform Commercial Code (UCC), the fact that plaintiff is the current holder of a promissory note, indorsed in blank, gives plaintiff the right to enforce the note." *Peper*, 278 Or App at 596. We also rejected the defendant's argument that the plaintiff was not the real party in interest, concluding that the plaintiff was "the successor to the original lender and, as such, is the beneficiary of the deed of trust." *Id.* at 598.

In *Niday*, the defendant challenged the plaintiff's ownership of the note, arguing that the plaintiff "presented no evidence as to when [indorsements] were placed on the Note or whether either stamp was placed on the Note with authority, and no evidence that the Note could even be [i]ndorsed given the bankruptcy of the original lender."[7] We summarily rejected those arguments, observing that the

> "defendants' assertion that summary judgment was improper because there were genuine issues of material fact as to 'unresolved issues of transfer and ownership' of the promissory note and deed of trust[ was] *** foreclosed by two of our recent decisions."

*Niday*, 283 Or App at 665 (citing *Walmsley* and *Peper*).

Casting defendants' arguments as challenges to plaintiff's ownership of the note, plaintiff asserts that those arguments are immaterial. Instead, plaintiff asserts that, "[u]nder *Walmsley* and its progeny, the only facts the Trust

---

[6] Appellant's Opening Brief at 23, *Nationstar Mortgage, LLC v. Peper*, 278 Or App 594, 377 P3d 678 (2016) (CA A157967).

[7] Appellants' Corrected Opening Brief at 18, *Nationstar Mortgage, LLC v. Niday*, 283 Or App 663, 389 P3d 1176, *rev den*, 361 Or 671 (2017) (CA A160373).

is required to prove in order to prove its standing are (1) that it is in possession of the Note and (2) that the Note contains a blank indorsement or an indorsement to the Trust." Plaintiff asserts that it satisfied those requirements by submission of the original note into evidence and testimony from Flannigan concerning the possession history of the note. Plaintiff points out that the physical content of the note maintained in the original collateral file was undisputed, including both a special indorsement to the trust and a blank indorsement. As plaintiff observes, the evidence showed that "the blank indorsement had been created and attached to the original note since at least 2010."

Citing *Peper*, plaintiff asserts that the later special indorsement that Ocwen created was irrelevant because it was entitled to foreclose under the blank indorsement. *See Peper*, 278 Or App at 596 ("[U]nder the Uniform Commercial Code (UCC), the fact that plaintiff is the current holder of a promissory note, indorsed in blank, give plaintiff the right to enforce the note."). In any event, plaintiff asserts that "there was no evidence at trial suggesting that Ocwen lacked authority to create the special indorsement, which was executed by a Deutsche Bank National Trust Company representative." *See* ORS 73.0308(1) (providing a rebuttable presumption that signatures are "authentic and authorized"). Accordingly, plaintiff asserts that it demonstrated that it was the holder in possession of the note under both the blank and special indorsements.

As for defendants' reliance on ORS 73.0203(2) and Official Comment 2 to UCC section 3-203, plaintiff asserts that defendants have taken both the statute and commentary out of context. Plaintiff argues that ORS 73.0203(2) "merely explains that[,] even if a transfer occurs without negotiation, the transferee still receives the rights of the transferor." Citing to ORS 73.0203(1) and (2), plaintiff observes that "a 'negotiation' is the transfer of possession of a note that is either indorsed to the new possessor or is indorsed in blank." Moreover, according to plaintiff, Official Comment 2 "does not provide that the rights of the transferee must always be proved, but instead specifies that only a transferee who is not a holder because it doesn't have an

indorsement must prove its rights.[8] (Emphasis omitted.) Plaintiff further notes that ORS 73.0203(2) explains that, "if a transfer occurs without a proper indorsement so that the transferee is not a holder, the transferee still has rights." Plaintiff concludes that ORS 73.0203(2) is inapplicable because it "established at trial that it is the holder of the note[, that is], the party in possession of an original note with a blank or special indorsement."

## APPLICATION

We agree with plaintiff that, to the extent defendants challenge plaintiff's ownership of the note, that argument is misplaced. As this court has clearly has held, a holder is entitled to enforce a negotiable instrument, regardless of whether the holder is the owner of the instrument. ORS 73.0301; *Walmsley*, 277 Or App at 696-97.

However, plaintiff's right to enforce the note as a holder also was at issue at trial. As noted, ORS 73.0301 provides:

"'Person entitled to enforce' an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to ORS 73.0309 or 73.0418(4). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."

---

[8] Official Comment 2 to UCC section 3-203 reads in full:

"Subsection (b) states that transfer vests in the transferee any right of the transferor to enforce the instrument 'including any right as a holder in due course.' If the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument under Section 3-301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection (b) the transferee obtained the rights of the transferor as holder. Because the transferee's rights are derivative of the transferor's rights, those rights must be proved. Because the transferee is not a holder, there is no presumption under Section 3-308 [which addresses the authenticity of and authority to make signatures on a note] that the transferee, by producing the instrument, is entitled to payment. The instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired it. Proof of a transfer to the transferee by a holder is proof that the transferee has acquired the rights of a holder. At that point the transferee is entitled to the presumption under Section 3-308."

As further discussed, under ORS 71.2010(2)(u)(A), "holder" means "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]"

In our view, based on evidence in the record at trial, the trial court could determine for at least two reasons that plaintiff was the holder of the note under ORS 73.0301. First, as discussed, in arguing that Deutsche Bank had no authority to indorse the note after 2003, defendants relied on Deutsche Bank's 2003 assignment of the note and deed of trust. However, that document specifically identified the assignee of the note and trust deed as "JPMorgan Chase Bank *as trustee*, under the pooling and servicing agreement dated as of August 1, 2003, among Credit-Based Asset Servicing and Securitization LLC, Asset Backed Funding Corporation, Litton Loan Servicing LP and JPMorgan Chase Bank, C-BASS Mortgage Loan Asset-Backed Certificates, Series 2003- CB4." (Emphasis added.) Thus, the assignment documented a transfer of both the Brantingham note and trust deed to the same trust that is the plaintiff in this action, with JPMorgan as trustee. Stated another way, the 2003 assignment transferred both the note and trust deed to JPMorgan in its fiduciary capacity as trustee for the trust, not to JPMorgan for its own account. In addition, evidence in the record supported the inference that possession of the note was transferred to plaintiff as custodian for the trust at that time. Evidence in the record also showed that plaintiff was the successor in interest to JPMorgan as trustee under the trust. Thus, evidence in the record permitted the trial court to infer that plaintiff held possession of the note in its dual capacities as custodian for the trust and as successor trustee. Accordingly, the trial court could determine that plaintiff was the holder of the note as successor trustee of the trust. *See* ORS 73.0110(3)(b)(A) (providing that, if an instrument is payable to a trust, the holder of the instrument is the "trustee, the representative, or a successor of either").

Second, there also was evidence that plaintiff was the holder of the note because it was in possession of the note under a properly made indorsement in blank. ORS 73.0205(2) provides that "[i]f an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank

indorsement.'" By virtue of the 1998 special indorsement from PacificAmerica Securities, Inc., and its own possession of the note, Deutsche Bank was the holder of the note under ORS 71.2010(2)(u)(A) when it made the indorsement in blank.[9] Such a holder is entitled to transfer the instrument by blank indorsement and thereby imbue its transferee with holder status. *See* ORS 73.0205(2) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.").

ORS 73.0203 does not alter that conclusion because the note was properly negotiated to plaintiff under ORS 73.0201. The latter statute provides, in part:

"(1) 'Negotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.

"(2) *** If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."

In short, negotiation is accomplished by transfer of possession alone where a note is properly indorsed in blank.[10] Because it was in possession of a properly indorsed-in-blank note, plaintiff was vested with Deutsche Bank's right as a holder to enforce the note. *See* ORS 73.0203(2) (stating that the "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument").[11]

---

[9] That would be true under the plain text of ORS 71.2010(2)(u)(A) even if Deutsche Bank had previously assigned the note to JPMorgan as trustee, as long as Deutsche Bank was in possession of the note. Defendants' argument implicitly appears to assume—as indeed it must—that Deutsche Bank was in possession of the note when Deutsche Bank made the challenged indorsements here.

[10] Moreover, the fact that an otherwise proper indorsement in blank is undated is immaterial. *See In re Wilson*, 442 BR 10, 15 (Bankr D Mass 2010) ("Regardless of when the note was indorsed, it is uncontroverted that it is *now* indorsed and in the possession of Deutsche Bank.") (emphasis in original); *see also In re Hunter*, 466 BR 439, 449-50 (Bankr ED Tenn 2012) (same).

[11] In contrast, to prove standing as a nonholder in possession with the rights of a holder under UCC section 3-203, a plaintiff must prove the chain of transfers *starting with the first holder of the note*. *See, e.g.*, *Murray v. HSBC Bank USA*, 157 So 3d 355, 358 (Fla 4th DCA 2015) (so holding). Where a nonholder cannot prove that a transferor had any right to enforce the note, it cannot derive any right from the transferor and is not a nonholder in possession of the instrument with the rights of a holder to enforce. *Id.* at 359.

The trial court also was entitled to determine that plaintiff was the holder of the note even though defendants point out that the indorsement in blank appears to have been used to create a further stamped special indorsement from Deutsche Bank to plaintiff sometime after July 1, 2008, when plaintiff's name was changed from Bank of New York to its current name, Bank of New York Mellon, the name appearing on the stamped special indorsement. Assuming, as the evidence would have permitted the trial court to find, that plaintiff already was in possession of the note indorsed in blank both as the original custodian for the trust and as successor trustee, defendants cite no authority for the proposition that a subsequent attempt to use that blank indorsement to create a special indorsement of the note to plaintiff somehow would defeat plaintiff's status as the holder of the note. To the contrary, ORS 73.0205(3) permits a holder to

> "convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable."[12]

It is important to emphasize that defendants have admitted default and that they have interposed no defenses to the note. As such, their only legitimate interest is in making payment to the right party. Viewed in that light, our conclusions in no way undermine defendants' interest in avoiding a risk of multiple liability or inconsistent adjudications involving possible rival claimants to the note. The reason behind the "person entitled to enforce" principle set out in ORS 73.0301 is to ensure that, "if a maker makes a payment to a 'person entitled to enforce,' the obligation is satisfied on a dollar for dollar basis, and the maker never has to pay that amount again." *In re Zulueta*, BAP No. NC-10-1459-HPAJU, 2011 WL 4485621 at *6 (BAP 9th Cir Aug 23, 2011), *aff'd*, 520 Fed Appx 558, 2013 WL 2242996 (9th Cir May 22, 2013)

---

[12] Based on our conclusions, we need not determine the effect, if any, of the special indorsement of the note that was created on or after 2011. We note in passing that, assuming that indorsement was anomalous under ORS 73.0205(4), it would not affect the validity of any prior indorsement or other transfer of the note. ORS 73.0205(4) provides:

> "'Anomalous indorsement' means an indorsement made by a person who is not the holder of the instrument. An anomalous indorsement does not affect the manner in which the instrument may be negotiated."

(internal quotation marks omitted). Based on our conclusion that evidence supported the trial court's determination that plaintiff was the holder of the note, there is no risk that defendants will be required to respond twice to the same obligation.

Affirmed.