Argued and submitted October 28, 2019; on appeal, reversed and remanded as to plaintiffs' ORICO claim, otherwise affirmed, cross-appeal dismissed as moot September 22, 2021

Henry W. WILLMS
and Dolly G. Willms,
*Plaintiffs-Respondents*
*Cross-Appellants,*

*v.*

AMERITITLE, INC.,
a Delaware corporation,
converted from an Oregon corporation by
Articles of Conversion dated January 15, 2016,
*Defendant-Appellant*
*Cross-Respondent.*

Deschutes County Circuit Court
13CV0719; A165216

499 P3d 79

Defendant AmeriTitle, Inc., appeals from a judgment in favor of plaintiffs Henry Willms and Dolly Willms for $3,225,000, which was entered after a jury found for plaintiffs on their claims for fraud and violations of the Oregon Racketeer Influenced and Corrupt Organizations Act (ORICO). Plaintiffs cross-appeal a supplemental judgment that denied their request for attorney fees that was made pursuant to the prevailing-party attorney fee provision in ORICO. Defendant raises nine assignments of error involving the trial court's denial of its directed-verdict motion, the court's jury instructions, the court's award of punitive damages, and the court's statute of limitations rulings. Among numerous arguments, defendant contends that the trial court erred in denying its directed-verdict motion by mistakenly concluding that the six-year statute of limitations in ORS 12.080(3) applied to plaintiffs' fraud claim, and in rejecting defendant's arguments that plaintiffs had not presented evidence of a "pattern of racketeering" activity as required under ORICO because all of plaintiffs' claims of illegal conduct revolved around a single escrow transaction. Defendant also argues that the trial court erred at the jury-instruction phase when it concluded that a six-year statute of limitations applied to both plaintiffs' fraud and ORICO claims. *Held*: The trial court did not err in denying defendant's directed-verdict motion based on the contention that the statute of limitations had run on the fraud claim, because plaintiffs presented a claim for interference with "any interest in property" subject to the six-year limitations period in ORS 12.080(3). Likewise, the trial court did not err in denying defendant's directed-verdict motion that contended plaintiffs had not presented evidence of a "pattern of racketeering" activity, because plaintiffs had presented such evidence. However, the trial court did err in instructing the jury that a six-year statute of limitations applied to both plaintiffs' fraud and ORICO claims, because, in fact, a five-year limitation period applied to plaintiffs' ORICO claim. That error was not harmless. Plaintiffs' cross-appeal was dismissed as moot.

On appeal, reversed and remanded as to plaintiffs' ORICO claim, otherwise affirmed; cross-appeal dismissed as moot.

Stephen P. Forte, Judge.

Duane A. Bosworth argued the cause for appellant-cross-respondent. Also on the briefs were Chris Swift and Davis Wright Tremaine LLP.

Kathryn H. Clarke argued the cause for respondents-cross-appellants. Also on the briefs was D. Zachary Hostetter.

Jon W. Monson and Cable Huston LLP filed the brief *amicus curiae* for Oregon Land Title Association, Inc.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

SHORR, J.

On appeal, reversed and remanded as to plaintiffs' ORICO claim, otherwise affirmed; cross-appeal dismissed as moot.

**SHORR, J.**

Defendant AmeriTitle, Inc., appeals from a judgment in favor of plaintiffs Henry and Dolly Willms for $3,225,000, which was entered after a jury found for plaintiffs on their claims for fraud and violations of the Oregon Racketeer Influenced and Corrupt Organizations Act (ORICO), ORS 166.715 to 166.735.[1] Plaintiffs cross-appeal a supplemental judgment that denied their request for attorney fees that was made pursuant to ORS 166.725(14), the prevailing-party attorney fee provision in ORICO. Defendant raises nine assignments of error. For the reasons discussed below, we affirm the judgment on plaintiffs' common law fraud claim and reverse the judgment on plaintiffs' ORICO claim because the trial court erred when it prevented defendant from arguing to the jury that plaintiffs' claims were time barred under the five-year limitations period provided by ORS 166.725(11)(a).

In plaintiffs' cross-appeal, they contend that the trial court erred in failing to make findings of fact when exercising its discretion to reject plaintiffs' attorney-fee request. Because we reverse the judgment in favor of plaintiffs on their ORICO claim, there is no basis for an award of attorney fees on that claim. As a result, we dismiss plaintiffs' cross-appeal as moot.

Because much of our opinion is directed at defendant's assignments of error relating to the trial court's denial of defendant's motion for a directed verdict, we begin our opinion by stating the facts of the underlying dispute in the light most favorable to plaintiffs, the nonmoving parties. *See MAT, Inc. v. American Tower Asset Sub, LLC*, 312 Or App 7, 10, 493 P3d 14 (2021) (doing same in appeal involving multiple legal issues but focusing primarily on the trial court's denial of a directed verdict motion). Where additional substantive or procedural facts relate to other assignments of error, we state those facts separately below, consistently with the corresponding standard of review.

---

[1] Certain ORICO provisions have been amended since the relevant events in this case. However, those amendments do not affect our analysis, and we cite to the current statutory provisions throughout this opinion.

## I. FACTS

A. *The Facts Giving Rise to This Dispute*

The disputes that gave rise to this lawsuit between plaintiffs and defendant AmeriTitle, Inc., a title company, arise from different sets of agreements, loans, and payments that were made, or not made, under those agreements. There are multiple individuals and entities involved in the various agreements and loans, including several who are not parties to this appeal. We parse those out as best we can to set the stage for this dispute.

Plaintiff Henry Willms and his wife, plaintiff Dolly Willms, acquired a 524-acre property in Anderson, California (the Anderson property) that they intended to develop. Mr. Willms was introduced to Rowe Sanderson, a developer in Bend who had an interest in developing California property. Sanderson was a principal in Sanderson Company, Inc. (SCI) and a company called Sanderson Communities, Inc.

1. *The original option agreement on the Anderson property*

In 2002, the Willms Family Trust and SCI entered into an option agreement that gave SCI the option to purchase the Anderson property. The agreement also effectively permitted SCI to finance the development of the Anderson property by taking loans out against the Anderson property. In 2005 and 2006, SCI or Sanderson caused to be borrowed nearly $8 million from a bank and opened a revolving line of credit for $2 million more that were both either secured by the Anderson property or guaranteed by Willms himself.

2. *The LPV property and LPV note*

Separately, in late November 2005, SCI sold real property in central Oregon (the LPV property) to LaPine Village LLC (LPV). As part of that transaction, LPV agreed to pay $1.5 million to SCI by making a promissory note (the LPV note) payable to SCI. The LPV note was secured by a trust deed to the LPV property and named defendant as the trustee. The LPV note was signed by LPV's managing member, Dominic Chan. Payments were to be made directly to SCI's office in Bend. The LPV note contemplated a quick

repayment with monthly payments commencing in January 2006 and the balance paid in full by November 2006.

3. *SCI borrows $500,000 from plaintiffs in October 2006 and provides them with the LPV note as security*

In the fall of 2006, Sanderson approached Mr. Willms for a $550,000 loan, stating that he was in need of operating capital. In October 2006, SCI issued a note (the SCI note) in which it promised to pay plaintiffs $550,000 with 10 percent interest. Although not memorialized in the SCI note, Mr. Willms testified that plaintiffs ended up loaning only $500,000 to SCI because plaintiffs did not have the other $50,000 available. Mr. Willms understood from Sanderson that SCI was due to be paid back on the LPV note in late November 2006 and that plaintiffs would be paid out of those loan proceeds.

SCI provided a formal security agreement by which plaintiffs were given a security interest in the LPV note and could enforce the LPV note. As security for the loan, SCI agreed to transfer the LPV note to plaintiffs upon their request. The agreement provided that, upon the request of plaintiffs, "Sanderson will *** assist [plaintiffs] in taking possession of the LPV Note" and deliver the note "with one or more assignments indorsed in blank." The LPV note was transferred to Mr. Willms, although it was not indorsed. The security agreement also stated that the LPV note was secured by a deed of trust. As noted, the LPV note was, in fact, secured by a trust deed to the LPV property in central Oregon.

4. *The security agreement is placed in escrow with defendant*

As part of the loan from plaintiffs to SCI, plaintiffs required that the security agreement, granting plaintiffs an interest in the LPV note, be placed in escrow. SCI's controller delivered the security agreement to Libby Hervey at defendant in November 2006. The SCI controller included a cover note with the delivery that stated, "Hi Libby, here is the Security Agreement for the [SCI] Note. So we owe Hank [Willms] $500,000 plus interest @ 14% when the [LPV] Note from Dominic [Chan at LPV] is paid in full."

The correspondence, which attached the security agreement, caused Hervey to open up the escrow file. Hervey knew Sanderson because he was a client for whom she had closed numerous transactions over the years. Hervey also knew Mr. Willms through a prior escrow transaction.

Significant to this dispute, Mr. Willms testified that he had informed Hervey that he was in possession of the LPV note.[2] Mr. Willms believed that he had had that conversation with Hervey "more than once." Mr. Willms and his daughter, Catherine Locke, also testified that they discussed with Hervey that plaintiffs were to be paid funds from the payments made by LPV into escrow. Mr. Willms understood from Hervey that she would pay plaintiffs out of that escrow.

Mr. Willms also spoke with Hervey around the time that the LPV note was due at the end of November 2006. Hervey stated that Chan, LPV's principal, was sick and that LPV could not pay back the note. When the Willms's daughter followed up later in March 2007, Hervey again stated that Chan was sick, that the escrow had not closed, and that Hervey understood that plaintiffs were anxious. Hervey further stated that she would "definitely let [plaintiffs] know the minute she had heard anything different."

5.  *The increasing SCI debt and the modified option agreement between SCI and plaintiffs*

Following the opening of the escrow, Sanderson borrowed additional money directly from plaintiffs, including additional loans of $125,000 and $375,000 in December 2006. By July 2007, plaintiffs faced a threat of foreclosure of the Anderson property due to the unpaid loans that Sanderson or SCI had caused to be incurred against the property. To avoid foreclosure, plaintiffs were required to obtain a $10.2 million loan to refinance the debt that encumbered plaintiffs' property. As a result, in July 2007, plaintiffs and Sanderson entered into a modified option agreement. Among other things, the modified option agreement provided for certain

---

[2] At trial there was a factual dispute regarding this point. However, we must state the facts in the light most favorable to plaintiffs. *MAT, Inc.*, 312 Or App at 10.

payments to be made in July and August 2007 and beyond. On August 27, 2007, Sanderson Communities, Inc., made a payment of $507,117.33 to Mr. Willms. Mr. Willms testified that this was a "benchmark payment[]" that had been made under the modified option agreement. Mr. Willms testified that this was not a payment for the SCI note.[3] The modified option agreement and correspondence from Locke to Sanderson anticipated a payment due of over $500,000 on August 25, 2007, that would be applied against the "Willms debt." The Willms debt was defined in the modified option agreement to encompass *several* different loans from plaintiffs to Sanderson including the October 2006 loan of $500,000 and the December 2006 loans of $125,000 and $375,000, respectively. Locke also wrote that the LPV note would not be returned until plaintiffs were "free of the Bank's lien on our property."

6. *LPV's delayed payment of the LPV note and defendant's representations made during escrow*

As set out above, the LPV note was due in November 2006, but defendant had informed Mr. Willms and Locke, as late as March 2007, that LPV could not pay the LPV note. Mr. Willms later learned that Chan was, in fact, having LPV make payments during this period through Hervey to pay down the LPV note and that she had been arranging to pay SCI with those funds. In January 2007, LPV made a payment of $250,000 to SCI, which was handled through an escrow by defendant and acknowledged by Hervey. Two more payments of $205,000 and $300,000 were made to SCI in March 2007 through a similar escrow process. On August 27, 2007, a subsequent payment of $500,000 was made by LPV through the escrow handled by defendant and Hervey and paid to SCI.

On October 26, 2007, LPV was prepared to pay off the LPV note. Defendant did not have the original LPV note to return to LPV and did not have the LPV trust deed. Hervey drafted a Letter of Indemnity for SCI that stated,

---

[3] Defendant contends that the August 2007 payment paid off the $500,000 SCI note, which was secured by the LPV note. Although that is a reasonable inference from the evidence, we must view the evidence in the light most favorable to plaintiffs. *MAT, Inc.*, 312 Or App at 10.

incorrectly, that the original LPV note and trust deed had been "Lost/Misplaced/Destroyed." It further provided that SCI held defendant harmless for any and all loss resulting from the reconveyance of the trust deed to LPV. As mentioned earlier, Mr. Willms testified that he had told Hervey that he, in fact, had possession of the LPV note.

Defendant reconveyed the LPV trust deed to LPV in late October or early November 2007. Defendant did not request any instructions from Mr. Willms regarding the trust deed. A year later in October 2008, plaintiffs requested information from defendant about the LPV escrow. Mr. Willms learned from defendant that defendant had no instructions from Sanderson to pay any funds to plaintiffs. In November 2008, Willms also learned from defendant that the LPV trust deed had been reconveyed to LPV.

## B. *The Relevant Procedural Facts*

Plaintiffs proceeded to file a claim against Sanderson, although Sanderson was in bankruptcy proceedings. Plaintiffs also sued LPV for $500,000 plus interest and obtained a default judgment of over $721,000. Plaintiffs allege that they were not successful in recovering any of this money.

On May 9, 2013, plaintiffs filed this lawsuit against defendant. The relevant complaint at the time of trial alleged one claim for fraud and one claim for various violations of ORICO. As will be significant later, plaintiffs' initial complaint was filed more than five years after LPV had been expected to pay off the LPV note and had, in fact, paid off the LPV note, but less than five years from when Mr. Willms learned that the funds to pay off the LPV note had been paid to SCI.

As noted, a jury found for plaintiffs on their fraud and ORICO claims. It awarded plaintiffs $721,095.89 in economic damages and $278,904.11 in noneconomic damages, together equaling exactly $1 million. The damages for the ORICO claim were trebled under the relevant ORICO provision to $3 million, effectively adding $2 million in additional damages. The jury also awarded $750,000 in punitive

damages, $525,000 of which was directed to the Department of Justice under ORS 31.735(1).

We do not further describe here the many motions and legal issues that arose before, during, and after trial. Instead, we address relevant motions and issues below when we address particular legal issues raised by defendant's assignments of error.

## II.   ANALYSIS

### A.   *The Trial Court's Denial of Defendant's Directed Verdict Motion*

We turn to defendant's first through fourth assignments of error in which defendant contends in a combined argument that the trial court erred in denying its motion for a directed verdict.[4] In reviewing the denial of defendant's directed-verdict motion, "we consider the evidence, including any inferences, in the light most favorable to the party that obtained a favorable verdict"—here, plaintiffs. *Najjar v. Safeway, Inc.*, 203 Or App 486, 489-90, 125 P3d 807 (2005). "[W]e will not set aside a jury verdict 'unless we can affirmatively say that there is no evidence from which the jury could have found the facts necessary to establish the elements of [plaintiffs'] cause of action.'" *Conway v. Pacific University*, 324 Or 231, 235, 924 P2d 818 (1996) (quoting *Brown v. J. C. Penny Co.*, 297 Or 695, 705, 688 P2d 811 (1984)).

Within its first four assignments of error, defendant raises a slew of arguments to support its contention that the trial court erred in denying its directed-verdict motion. We conclude that only four of those specific arguments were presented to the trial court and preserved for our review, and do not address those arguments that were not preserved. In two of the four preserved arguments, defendant contends

---

[4] Defendant also contends that the trial court erred in denying its motion for a new trial and, "[i]n an abundance of caution," assigns error to the denial of its motion for judgment notwithstanding the verdict. After trial, defendant moved both for judgment notwithstanding the verdict and a new trial. The trial court denied both. We recently reiterated that "orders that deny both new trial and [judgment notwithstanding the verdict] motions are not appealable." *Golik v. CBS Corp.*, 306 Or App 202, 223, 472 P3d 778 (2020); *see also Boers v. Payline Systems, Inc.*, 141 Or App 238, 247, 918 P2d 432 (1996) ("As a general rule, a party may not assign the denial of a motion for new trial as error.").

that no reasonable juror could find that plaintiffs presented clear and convincing evidence to support (1) the elements of plaintiffs' fraud claim or (2) their claim for punitive damages. Having reviewed the record under the appropriate standard of review, we conclude that there is sufficient evidence from which the jury could have found for plaintiffs on their fraud and punitive damage claims, and we reject those arguments without further discussion.

We turn to defendant's two preserved arguments that we substantively address. Defendant contends that the trial court should have granted it a directed verdict because the statutes of limitations had run on plaintiffs' ORICO and fraud claims. It also contends that plaintiffs failed to present evidence to support "a pattern of racketeering activity" because, at most, plaintiffs had presented evidence relating to a single escrow transaction. As explained below, we conclude that the court applied the correct statutes of limitations to plaintiffs' claims at the directed-verdict stage of trial and, thus, did not err in denying defendant's directed-verdict motion on that basis. Further, with respect to plaintiffs' ORICO claim, we conclude that plaintiffs presented sufficient evidence to survive a directed verdict.

1. *Statutes of limitations issues*

We first address defendant's arguments regarding the statutes of limitations in the context of its directed-verdict motion. Defendant contends that the trial court erred in denying its directed-verdict motion by mistakenly concluding that a six-year statute of limitations applied to plaintiffs' claims. Instead, defendant contends, the court should have applied a two-year statute of limitations to plaintiffs' fraud claim and a five-year statute of limitations to plaintiffs' ORICO claim. Defendant argues that the escrow transaction that gave rise to plaintiffs' claims fully concluded on or before October 30, 2007, and that plaintiffs filed their complaint on May 9, 2013, which was more than five years later. Defendant maintains that the court applied an incorrect six-year statute of limitations to *both* the ORICO and fraud claims, which prevented defendant from prevailing on its statutes of limitations defenses.

Plaintiffs initially respond with procedural arguments that they contend barred the trial court's review and subsequently bar our review of the underlying statutes of limitations issues. We reject those arguments without further discussion. On the merits, plaintiffs contend that the court did not err in denying the directed-verdict motion and applied the proper statutes of limitations to the relevant claims. As we discuss below, we agree with plaintiffs and conclude that the court did not err in denying defendant's directed-verdict motion by applying the wrong statutes of limitations to plaintiffs' claims.[5]

The record of defendant's directed-verdict motion is muddled, in part, because defendant's arguments to the trial court were sometimes inconsistent. Regardless, there is no support for defendant's contention that the court applied a six-year limitations period to plaintiffs' ORICO claim at the directed-verdict stage. In moving for a directed verdict, defendant argued that the ORICO statute of limitations was either four or five years and ran from the last claimed racketeering conduct. Plaintiffs responded that the ORICO limitations period was five years and ran from the date of plaintiffs' reasonable discovery of any racketeering conduct. No one argued for a six-year ORICO limitations period, and, at the directed-verdict stage of the proceedings, the court never referenced a six-year ORICO limitations period. We reject defendant's argument that the court applied an improper six-year limitations period to the ORICO claim when it denied defendant's directed-verdict motion.

With respect to plaintiffs' fraud claim, the trial court applied, as it had at summary judgment, the six-year limitations period in ORS 12.080(3). As we discuss below, we conclude that the six-year limitations period does apply to plaintiffs' fraud claim, because plaintiffs maintained that defendant committed a fraud that interfered with or injured plaintiffs' interest in real property under ORS 12.080(3).

At the directed-verdict stage of trial, defendant contended that the statute of limitations for fraud is two

---

[5] As we discuss below, however, the court erred later in the trial when it concluded, before instructing the jury, that a six-year statute of limitations period, rather than a five-year period, applied to plaintiffs' ORICO claim.

years, which is the limitations period provided under ORS
12.110(1), and that that period began to run from when
plaintiffs discovered any fraud. Defendant argued that
plaintiffs conceded that they discovered any claimed fraud
no later than November 2008, meaning that the statute of
limitations ran, at the latest, as of November 2010, which
was long before plaintiffs filed their initial complaint in
May 2013. In response, plaintiffs argued that their fraud
claim alleged that defendant had made a misrepresentation
that damaged or interfered with plaintiffs' interest in real
property, namely misrepresentations regarding the LPV
note and the reconveyance of the LPV trust deed that was
security for the LPV note. Accordingly, plaintiffs contended,
the correct statute of limitations was six years, which is
the period provided by ORS 12.080(3) "for interference with
or injury to any interest of another in real property." As
the parties understand it, and we agree with their under-
standing, the trial court denied defendant's directed-verdict
motion because it concluded that the six-year limitations
period under ORS 12.080(3) applied.

On appeal, the parties reprise their arguments
made in the trial court. Defendant contends that the court
erred in applying the six-year limitations period in ORS
12.080(3) because, as a matter of law, any misrepresenta-
tions made by defendant in connection with defendant's
reconveyance of the LPV trust deed was not an interference
with or injury to any interest of plaintiffs in real property.
Defendant contends that ORS 12.080(3) "applies to common
law torts arising from invasions of interests in real prop-
erty, such as waste, trespass, nuisance, and inverse condem-
nation" and not to claims of fraud that allege damage to
an interest in a trust deed. Thus, the legal issue before us
is whether interference with or injury to a party's interest
in a trust deed is "interference with or injury to any inter-
est of another in real property." ORS 12.080(3). This raises
an issue of statutory interpretation for which we apply our
usual rules of interpretation. *State v. Gaines*, 346 Or 160,
171-72, 206 P3d 1042 (2009).

We start with the relevant text in the context of
the statute. The "catch-all" limitations period for actions
that are neither contract actions nor actions "especially

enumerated" in ORS chapter 12 is two years. ORS 12.110(1); *see also Goodwin v. Kingsmen Plastering, Inc.*, 359 Or 694, 700, 375 P3d 463 (2016) (stating same). That catch-all captures claims for fraud generally, and further provides that the limitations period for fraud or deceit "commence[s] only from the discovery of the fraud or deceit." ORS 12.110(1); *see, e.g.*, *Burgdorf v. Weston*, 259 Or App 755, 768, 316 P3d 303 (2013), *rev den*, 355 Or 380 (2014) (applying ORS 12.110(1) to a claim of fraud based on the defendant's misrepresentations that induced the plaintiff to loan the defendant money and pay expenses associated with real property).

ORS 12.080, however, defines one of the especially enumerated limitations periods for other particular actions. It provides a six-year limitations period for contract actions, ORS 12.080(1), among other actions, and further states that

> "[a]n action for waste or trespass upon *or for interference with or injury to any interest of another in real property*, excepting those mentioned in [certain statutes not relevant here] shall be commenced within six years."

ORS 12.080(3), (4) (emphasis added). The statute expressly applies to claims for interference with or injury to "*any interest of another* in real property." (Emphasis added.) Because the Supreme Court in *Goodwin* addressed the meaning of the term "interest" in that statute, we turn to that case for guidance.

In *Goodwin*, the Supreme Court noted the distinction between an action for injury to an interest in real property and an action for injury to the property itself; although the former is covered by ORS 12.080(3), the latter is not. 359 Or at 701. "[A]n injury to an 'interest' in property would be something distinct from an injury or damage to the property itself." *Id*. *Goodwin* noted that an "interest" in real property is a legal term of art, which was defined in *Black's Law Dictionary* at the time that language was added to the statute as "'a right to have the advantage accruing from anything; any right in the nature of property, but less than title; a partial or undivided right; a title to [a] share.'" *Id*. (quoting *Black's Law Dictionary* 950 (4th ed 1968)). *Goodwin* ultimately concluded that a claim for negligent construction that damaged a home was not a claim for injury to an

interest in real property subject to the six-year limitations period in ORS 12.080(3), but was a claim for damage to the property itself covered by the two-year limitations period in ORS 12.110(1). *Id.* at 703.

The court's conclusion in *Goodwin* was compatible with its conclusion in *Beveridge v. King*, 292 Or 771, 773, 643 P2d 332 (1982). In *Beveridge*, the plaintiffs entered into a contract to purchase a residential home that the defendant was building on the property. *Id.* After completion of the home, the defendant retained title to the property as security for the payment of the purchase price. *Id.* at 778. The plaintiffs brought a complaint more than two years later that alleged that the defendant failed to "construct the house in a workmanlike manner," and listed 18 particular examples of that failure. *Id.* at 773. The defendant contended that either the two-year limitations period under ORS 12.135(1) (1971),[6] which applied to construction defect claims, or the two-year limitations period under ORS 12.110(1), applying to fraud claims generally, barred the plaintiffs' claim. *Id.* at 774-76. The Supreme Court concluded that ORS 12.135(1) (1971) did not apply, because that statute applied to physical injury to property, among other things, but not to financial losses resulting from the inadequate services described in that statute. *Id.* at 775. The court further concluded that, even assuming that the plaintiffs had not alleged a claim for breach of contract, ORS 12.110(1) did not apply, because the plaintiffs had alleged an injury to their interest in real property—namely, the contractual interest that the plaintiffs had in purchasing the property—and therefore the especially enumerated six-year limitations period under ORS 12.080(3)[7] applied to the plaintiffs' claim. *See id.* at 778-79 (stating that "[a]n action for damages for injury to any interest of plaintiffs in the real property which was the subject of this sale is 'especially enumerated' in ORS 12.080(3)"). In *Goodwin*, the court summarized *Beveridge*:

---

[6] ORS 12.135(1) has been amended numerous times since *Beveridge*. *See* Or Laws 1983, ch 437, § 1; Or Laws 1991, ch 968, § 1; Or Laws 2009, ch 715, § 1.

[7] ORS 12.080(3) has also been amended a number of times since *Beveridge*. *See* ORS 12.080(3) (1973), *amended by* Or Laws 1983, ch 437, § 2; Or Laws 1987, ch 705, § 3; Or Laws 1991, ch 968, § 2. Those amendments do not affect our discussion of *Beveridge* or our analysis of the instant case.

> "The court noted that [ORS 12.080(3)] applied when an action is one for interference or injury to 'any interest of another in real property.' In *Beveridge*, the court observed, the plaintiffs did not have title to the property, but they nevertheless had an 'interest' in the property by virtue of their contract [to purchase the property]."

*Goodwin*, 359 Or at 706 (quoting *Beveridge*, 292 Or at 777-78).

Keeping in mind that law regarding the meaning of "any interest of another in real property" under ORS 12.080(3), we return to the question of whether plaintiffs' claim that defendant misrepresented the payments on the LPV note and the circumstances regarding the reconveyance of the LPV trust deed is an action that falls within the six-year statute of limitations in ORS 12.080(3). Applying *Beveridge* and *Goodwin*, we conclude that it is.

Here, in their case-in-chief, plaintiffs presented evidence that Sanderson physically transferred the LPV note to plaintiffs as security for the SCI note. Sanderson also provided plaintiffs with a security agreement that granted plaintiffs a security interest in the LPV note and expressly provided that the LPV note was further secured by a deed of trust. In fact, the LPV note was secured by a trust deed to real property. As a result, plaintiffs had a perfected security interest in the LPV deed of trust under the provisions of ORS chapter 79.[8] In addition, the security agreement between Sanderson and plaintiffs demonstrates that it was the intent of Sanderson and plaintiffs for plaintiffs to have a security interest in the LPV deed of trust. The security agreement provided that, upon the request of plaintiffs, "Sanderson will *** assist [plaintiffs] in taking possession of the LPV Note" and deliver the note "with one

---

[8] *See* ORS 79.0109 (ORS chapter 79 applies to a security interest given in a note, secured by a deed of trust or mortgage, as security for another obligation); ORS 79.0203(7) ("The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage or other lien."); ORS 79.0313(1) ("Except as otherwise provided in subsection (2) of this section, a secured party may perfect a security interest in tangible negotiable documents, goods, instruments, money or tangible chattel paper by taking possession of the collateral."); ORS 79.0308(5) ("Perfection of a security interest in a right to payment or performance also perfects a security interest in a security interest, mortgage or other lien on personal or real property securing the right.").

or more assignments indorsed in blank" (although the note was ultimately never indorsed). Through the security agreement, plaintiffs held an interest in the LPV note that was secured by the LPV deed of trust, and it gave the right to plaintiffs to, upon request, obtain possession of the indorsed note, which would have also transferred the LPV deed of trust directly to plaintiffs for enforcement. *See Deutsche Bank Trust Co. Americas v. Walmsley*, 277 Or App 690, 696-97, 374 P3d 937 (2016) (stating conditions under which the holder of a negotiable note may enforce the note and deed of trust, even though that person was not the original payee on the note, if they are a holder of an indorsed note). Although not a direct ownership of real property, it is "any interest" in real property that is at least comparable to the *Beveridge* plaintiffs' contractual interest in acquiring real property that was not title but was still an interest in real property. We need not define precisely what plaintiffs' interest is, because, in any event, it is "any right in the nature of property." *Goodwin*, 359 Or at 701 (citing *Black's* at 950). Plaintiffs claimed and presented evidence of interference with that interest by pointing to defendant's misrepresentations that LPV had not been making payments on the LPV note, and misrepresentations to effect the reconveyance of the LPV deed of trust, that prevented plaintiffs from seeking payment from Sanderson of those loan proceeds, or from seeking an indorsement on the LPV note from Sanderson and then enforcing the note and deed of trust against LPV directly, before the trust deed was returned to LPV.

Defendant nevertheless contends that the statute of limitations in ORS 12.080(3) does not apply because, it argues, "purely economic harm does not fall within the scope" of that statute. For that proposition, defendant relies upon case law from our court, including *Morrison v. Ardee Pest Control*, 62 Or App 506, 661 P2d 576 (1983), and *Riverview Condo. Assn. v. Cypress Ventures (A150586)*, 266 Or App 574, 339 P3d 447 (2014). With regard to *Morrison*, defendant misreads that case. In that case, we held that ORS 12.080(3)[9] did not apply, because the plaintiffs' claim did not allege a harm to their interest in real property. *Morrison*, 62 Or App

---

[9] As in our discussion of *Beveridge*, amendments to ORS 12.080(3) since our decision in *Morrison* are not relevant here.

at 510. The claimed negligence—an improperly conducted inspection of a residence that failed to find dry rot while the plaintiffs were under contract to purchase the residence— did not cause harm to the plaintiffs' interest in the real property, because that interest remained the same both before and after the inspection: an interest in a property with dry rot. *Id.* That case does not stand for the proposition that physical harm to real property is required for ORS 12.080(3) to apply.

Our application of ORS 12.080(3) in *Riverview Condo. Assn.*, on the other hand, was clearly rejected by the Supreme Court in *Goodwin*. Our opinion in *Goodwin* expressly relied upon our decision in *Riverview Condo. Assn.*, which held that ORS 12.080(3) applied to a construction defect claim. *Goodwin v. Kingsmen Plastering, Inc.*, 267 Or App 506, 510, 340 P3d 169 (2014), *aff'd on other grounds*, 359 Or 694, 375 P3d 463 (2016). The Supreme Court then rejected that proposition. *Goodwin*, 359 Or at 703. Thus, in any event, to the extent that either *Morrison* or *Riverview Condo. Assn.* stand for the proposition advanced by defendant, they are clearly inconsistent with the Supreme Court's decision in *Goodwin* and are no longer good law. *See id.* at 696 (concluding that ORS 12.080(3) "does not apply to actions for damage to property itself, which are subject to the two-year statute of limitations").

To the extent that defendant argues that our case law requires proof of damage to a property and not solely to the plaintiff's "pocketbook" for the statute of limitations in ORS 12.080(3) to apply, that law has been set aside by *Goodwin*. We conclude that plaintiffs presented a claim for "interference with or injury to any interest of another in real property" subject to the six-year limitations period in ORS 12.080(3). Defendant makes no attempt to argue that, if that period applies, the trial court erred in denying its directed-verdict motion argument that the statute of limitations had run on the fraud claim. As a result, we conclude that the trial court did not err on that basis.

2.  *ORICO pattern of racketeering issue*

We turn to defendant's argument that the trial court erred when it denied its directed-verdict motion that

contended plaintiffs had not presented evidence of a "pattern of racketeering activity" as required under ORICO.[10] Defendant contended in the trial court and contends now again before us that, as a matter of law, plaintiffs did not present evidence of a "[p]attern of racketeering activity" under ORS 166.715(4) because all of plaintiffs' claims of illegal conduct involved a single escrow transaction. Plaintiffs respond that there were multiple separate incidents that formed a pattern of racketeering throughout that escrow transaction. Plaintiffs claimed, among other things, that defendant's misrepresentations to plaintiffs hid the fact that LPV had been making payments during the escrow period in January and March 2007. Plaintiffs also claimed that defendant's representative later prepared documents in October 2007 that falsely stated that the LPV note had been lost, misplaced, or destroyed. Plaintiffs alleged that that conduct was "racketeering activity" under ORS 166.715(6)(a) including, among other subsections, ORS 166.715(6)(a)(TT) (relating to crimes under the statutes governing escrow), ORS 166.715(6)(a)(B) (a violation of ORS 162.065, the crime of perjury in providing a knowingly false sworn statement), and ORS 166.715(6)(a)(P) (a violation of ORS 165.042, the crime of fraudulently obtaining a signature).

We initially note that we do not decide here whether the conduct that plaintiffs contend amounted to racketeering activity was, in fact, racketeering activity, because defendant did not adequately preserve that argument in its directed-verdict motion. Therefore, we assume without deciding that plaintiffs presented evidence of at least some racketeering activity consistent with its allegations in the trial court.[11]

---

[10] Defendant raises other arguments on appeal that contend that plaintiffs did not present sufficient evidence to survive defendant's directed-verdict motion against plaintiffs' ORICO claim. Again, those arguments were not raised in the trial court or sufficiently preserved for our review.

[11] ORS 166.715 defines "[r]acketeering activity" to include committing, attempting to commit, conspiring to commit, soliciting, coercing, or intimidating another person to commit "[a]ny conduct that constitutes a crime, as defined in ORS 161.515, under any of the following provisions * * *." ORS 166.715(6), (6)(a). That statute then lists various specific provisions, including criminal statutes and, among others, the real estate and escrow statutes in ORS chapter 696. ORS 166.715(6)(a)(TT). Plaintiffs argue that violations of those real estate and escrow statutes give rise to criminal liability under ORS 696.990(3), which provides that "[a] violation of any one of the provisions of ORS 696.505 to 696.590 is a Class A

We conclude that defendant adequately preserved only its contention that plaintiffs had not presented sufficient evidence of a "*[p]attern* of racketeering activity" under ORS 166.715(4) necessary to survive a directed-verdict motion. (Emphasis added.) The issue before us is whether multiple incidents of racketeering activity can constitute a "[p]attern of racketeering activity" under ORS 166.715(4), even if those incidents occurred within a single escrow transaction that damaged two victims. As we discuss below, we conclude that they can.

The issue is again one of statutory interpretation for which we apply our usual methodology. *See Gaines*, 346 Or at 171-72. We start with the text in the context of the statute. *Id*. ORS 166.715(4) defines a "[p]attern of racketeering activity" and provides, in relevant part:

> "'Pattern of racketeering activity' means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents, provided at least one of such incidents occurred after November 1, 1981, and that the last of such incidents occurred within five years after a prior incident of racketeering activity."

We note a few significant aspects of that text within the overall statute. First, a pattern does not require proof of a long string of incidents; just "two incidents of racketeering activity" are necessary. Second, those two incidents can have, as is the case here, "the same *** victims," or be "interrelated by distinguishing characteristics, including a nexus to the same enterprise," among other characteristics. Third, the incidents may not be "isolated incidents." That particular phrase does not require proof of continuity of the incidents or any particular temporal element. *Computer Concepts, Inc. v. Brandt*, 310 Or 706, 721, 801 P2d 800 (1990); *see also Penuel v. Titan/Value Equities Group*, 127 Or App 195, 205, 872 P2d 28, *rev den*, 319 Or 150 (1994)

---

misdemeanor." Plaintiffs contended that defendant violated, among other statutes, various provisions of ORS 696.535, which refer to the power of the state real estate commissioner to discipline escrow agents for various improper conduct, misrepresentations, and conditions.

(stating that the phrase "does not have a temporal element" but describes the relationship among the predicate acts of racketeering). Rather, the Supreme Court has "read the phrase 'not isolated' to describe the relationship between or among the predicate acts, including their nexus to the same enterprise." *Computer Concepts, Inc.*, 310 Or at 721.

In *Computer Concepts, Inc.*, the Supreme Court examined the legislative history of ORICO and, particularly, the phrase "pattern of racketeering activity." *Id*. at 720. It noted that, "[b]oth in committee hearings and in floor debates, the participants stated that 'pattern of racketeering activity' was defined by the statute; they referred only to the words of the statute to define what a pattern is." *Id*. The court also noted that the only reference to time occurred when one committee witness stated that the statute was focused on "the relationship between this crime this day and this crime the next day. That is, this crime is part of a pattern." *Id*. The court stated that the legislative history indicated that the phrase "pattern of racketeering activity" should be "'liberally construed' in favor of plaintiffs." *Id*. (quoting ORS 166.735(2)).

From those points, we can reject defendant's contention that a "pattern of racketeering activity" cannot consist of two or more different incidents of racketeering activity taking place in connection with a single escrow file that resulted in damage to two victims—*e.g.*, a defendant making fraudulent statements regarding the receipt of escrow payments (ORS 166.715(6)(a)(TT)) and months later providing a knowingly false sworn statement (ORS.715(6)(a)(B)) or fraudulently obtaining a signature (ORS 166.715(6)(a)(P)) as part of the same escrow file. Presuming these incidents occurred, as we must in the posture of this appeal, there were more than two incidents with the same victims that were not isolated in occurrence, as they were related to each other and had a nexus to the claimed enterprise.[12]

---

[12] Plaintiffs alleged that there was an association between and among Sanderson, SCI, defendant, and defendant's representative, Hervey. Plaintiffs also alleged that this association was an ORICO enterprise. Defendant did not challenge in its directed-verdict motion the existence of this enterprise or claim plaintiffs failed to present evidence of such an association.

Defendant, relying primarily on two federal cases from the United States District Court for the District of Oregon, nevertheless contends that, because the alleged predicate acts all involved a single escrow file, that the acts and the overall escrow transaction as a whole must be a single incident under ORICO. Of course, those cases, although they can be relied upon for their persuasive reasoning, are not binding on our court. Respectfully, we disagree with each.

In *Newman v. Comprehensive Care Corp.*, 794 F Supp 1513, 1527 (D Or 1992), one district court judge concluded that, even assuming that the plaintiffs had alleged multiple predicate acts of racketeering within a failed merger of two corporate entities, "[t]he predicate acts alleged are not related; the failed merger was an isolated incident." The court first analyzed the plaintiffs' federal RICO claim, which has different requirements and higher standards for proof of temporal "continuity" of the pattern of racketeering activity, before it concluded in one sentence and without textual analysis of the Oregon statute that the plaintiffs' ORICO claim failed because it related to a single failed merger. *Id.* A different District of Oregon judge later followed the conclusion in *Newman* in an unpublished opinion that concluded that a complaint had not alleged an ORICO pattern of racketeering activity when it alleged multiple predicate acts connected to a single real estate transaction. *Altamont Summit Apartments LLC v. Wolff Properties LLC*, No CV 01-1260-BR, 2002 WL 31972359 at *9 (D Or Aug 21, 2002).

With respect, those cases add an element to the statute that does not exist. They require not just that plaintiffs prove a pattern of racketeering activity comprised, under the statute, of "at least two incidents of racketeering activity that have the same or similar *** victims *** or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents." ORS 166.715(4). Those cases also require that plaintiffs prove that that pattern of racketeering activity occur within two separate overarching financial transactions. Although defendant's position is not without some appeal, we conclude that a pattern of racketeering activity under

ORS 166.715(4) can consist of separate incidents of racketeering activity that have the same victims and a nexus to the same enterprise and are not isolated, in that those incidents are related in the way set forth in *Computer Concepts, Inc.*, but that still occur over the course of one larger overarching financial transaction. *See Burley v. Clackamas County*, 298 Or App 462, 467, 446 P3d 564, *rev den*, 365 Or 721 (2019) (stating that we are not bound by United States District Court opinions nor do we follow opinions that do not rely on our rules of statutory interpretation).

Our conclusion is consistent with *Penuel*, where we concluded that the defendants' misrepresentations in connection with the sale of unsuitable limited partnerships to 18- and 15-year old girls, sales which a jury could find were criminal violations of the securities laws, were not isolated incidents even though they occurred "within a very short time" and were "consummated within a few minutes." 127 Or App at 204-05. We noted that, even though such incidents of racketeering might seem isolated "in common parlance," the Supreme Court in *Computer Concepts, Inc.*, had concluded that "isolated incidents" did not have a temporal element and instead "describes the relationship between or among the predicate acts, including their relationship to the same enterprise." *Id*. The federal case law noted above requires reading into the term "isolated incidents" a temporal element that our Supreme Court has rejected. For that reason and those discussed above, we conclude that the trial court did not err in denying defendant's motion for a directed verdict that contended that plaintiffs had not demonstrated an ORICO "[p]attern of racketeering activity."

B.   *The Trial Court's Jury Instructions and Related Issues*

In its fifth through ninth assignments of error, defendant raises assignments of error relating to the jury instructions and, separately but relatedly, to the punitive damages award.

We very briefly address and reject defendant's fifth through seventh assignments of error. In its fifth and sixth assignments of error, defendant raises a number of arguments that the trial court erred in instructing the jury on

punitive damages and in failing, post-trial, to reduce the jury's $750,000 punitive damage award. We reject those arguments without extended discussion. We note only that the bulk of defendant's arguments contend that it violated defendant's due process rights under the Fourteenth Amendment to the United States Constitution for the jury to award $750,000 in punitive damages, given that plaintiffs also recovered treble damages under ORICO that effectively added another $2 million to the $1 million damages award. Defendant contends that the combination of punitive and trebled statutory damages results in an improper "ratio" of 2.75:1 under the relevant punitive-damage case law when comparing the punitive and statutory multiplier damages to the compensatory damages award. We note that we do not need to address that particular argument—and we express no opinion on it—because, as we discuss below, we are reversing the judgment on the ORICO claim and, accordingly, the ORICO treble damages award. However, to the extent that defendant would continue to maintain that it violates due process for the jury to award punitive damages of $750,000 when the jury awarded $1 million in damages on the fraud claim, we reject that argument without further discussion.

      We turn to defendant's eighth and ninth assignments of error, which contend that the trial court erred with respect to the jury instructions on plaintiffs' fraud and ORICO claims. We first address defendant's ninth assignment of error, which contends that the court erred at the jury-instruction phase when it concluded that a six-year statute of limitations applied to *both* plaintiffs' fraud and ORICO claims. As we discussed above in the directed-verdict section, the court correctly concluded that the six-year limitations period under ORS 12.080(3) applied to plaintiffs' fraud claim. The court concluded the same at the jury-instruction phase and that, again, was correct.

      At the directed-verdict stage, as we discussed above, there was no support for the contention that the trial court applied a six-year statute of limitations period to plaintiffs' ORICO claim. For some reason, that changed when the court decided the jury instruction issues. We recount

the arguments at the jury-instruction phase relating to the ORICO statute of limitations.

As in the directed-verdict motion, the arguments were a bit muddled. Defendant's primary counsel, Sieving, asked the court to instruct the jury on the appropriate statute of limitations that applied to each claim. Defendant wanted instructions on the appropriate statutes so that it could argue to the jury that the limitations period had passed on *each* of plaintiffs' claims. As to the fraud claim, defendant continued to maintain that the court should instruct the jury that a two-year statute of limitations applied. Defendant further contended that

> "we need a determination from the Court as to which statute applies to the two claims that are pending. Otherwise, we get into a mixed question of law and fact as to whether the six-year applies or whether the two-year applies or whether the—the five-year applies."

Defendant's counsel Sieving later stated, "[a]nd if the court would instruct them that there's two or four years on these two remaining claims, I can argue that they're time barred." Sieving's later reference to a four-year statute of limitations appears to have been a casual mistake as he had just referenced a five-year statute, which is the ORICO limitations period under ORS 166.725(11)(a). No statute of limitations at issue before the trial court had a four-year limitations period. Indeed, as discussed below, Sieving's co-counsel later explicitly contended to the court that the ORICO limitations period was, in fact, five years.

Plaintiffs responded by asking for a six-year statute of limitations to apply, seemingly, to *both* claims. Plaintiffs' counsel contended that, "if the Court's going to give an instruction as to which one applies, I'd ask for the six-year statute." Shortly after, the following exchange occurred:

> "THE COURT:   So the Court determines that it is the six-year *** statute of limitations, and so we're going to proceed on that. And so as a result of that, is there any reason we need a statute of limitations instruction?
>
> "MR. SIEVING:   Just for the record, to clarify, Your Honor, the Court's determining that there's a six-year statute of limitations to both pending claims?

"THE COURT:   Yes.

"MR. SIEVING:   All right.   Then we don't need it. We—we won't withdraw it, but for the record—

"THE COURT:   You're withdrawing it based on the Court's ruling. You're objecting to my determination. I got it."

Defendant's other counsel, McLure, then correctly noted that, "on the RICO statute, the question was we concede that it is a five-year statute, but the question is, is it—with the discovery rule or—no?" Sieving then contended that the ORICO limitations period began as of the last predicate racketeering act but acknowledged that the court was determining that a six-year statute of limitations applied. The court concluded the colloquy by stating, "we're moving you all down the road. That's what we're doing. And I understand you're objecting to that, so that's preserved for the record."

From that somewhat muddled colloquy, we can make some concrete observations. Defendant objected to the trial court's application of a six-year limitations period to plaintiffs' ORICO claim and contended that a five-year limitations period applied. Despite that objection, the court concluded that a six-year limitations period applied to the ORICO claim. The trial court was incorrect. The ORICO statute of limitations provides, in relevant part:

"Notwithstanding any other provision of law, a criminal or civil action or proceeding under ORS 166.715 to 166.735 [the ORICO statutes] may be commenced at any time within five years after the conduct in violation of a provision of ORS 166.715 to 166.735 terminates or the cause of action accrues."

ORS 166.725(11)(a). The court erred in concluding that a six- and not a five-year limitations period applied to plaintiffs' civil ORICO claim.

Plaintiffs argue, among other things, that, despite defendant's contention that it was prevented from arguing to the jury that plaintiffs' ORICO claim was time barred, defendant "never proposed to make any such showing" and incorrectly argued that the ORICO limitations period should

commence from the last predicate racketeering act and not from plaintiffs' discovery of any misconduct. It is unclear if plaintiffs are contending that defendant failed to preserve its argument or that any error in failing to instruct the jury is harmless. Regardless, we conclude based on the unique record before us that the issue is preserved and the error is not harmless.

Addressing preservation first, defendant asked the trial court to conclude that a five-year statute of limitations period applied to plaintiffs' ORICO claim and, *if the court did so*, asked the court to instruct the jury on the five-year ORICO statute of limitations. Defendant preserved its argument that it had a right to argue the five-year statute of limitations to the jury. *See Beall Transport Equipment Co. v. Southern Pacific*, 335 Or 130, 141, 60 P3d 530 (2002) (concluding that, by requesting an instruction, the party preserved for appeal the argument that the trial court erred in failing to give the instruction). The court then asked if defendant still wanted to present that instruction, and excused it from doing so after defendant stated that it would not further pursue the instruction if the court concluded that the limitations period was six years. The court specifically noted that it understood defendant's argument and that the objection to the court's ruling was preserved. After defendant's co-counsel correctly noted that ORICO had a five-year statute of limitation, but that the court had not addressed whether there was a discovery rule within the statute, the court cut off the entire colloquy with the parties by stating "we're moving you all down the road. That's what we're doing. And I understand you're objecting to that, so that's preserved for the record." Under these unique circumstances where the trial court asked if defendant wanted to pursue the instruction, stated that it understood defendant was preserving its objection, and then cut off further discussion about the instruction, we conclude that defendant's assignment of error was preserved. *Cf. State v. Martinez*, 275 Or App 451, 459-60, 364 P3d 743 (2015), *rev den*, 358 Or 611 (2016) (concluding that the preservation rules did not require the party to make ongoing specific objections within an exhibit where the party's general objection to the entire exhibit was already rejected).

We also conclude that the trial court's error was not harmless. *See* Or Const, Art VII (Amended), § 3; ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). The court, based on a misunderstanding of the applicable limitations period, prevented defendant from presenting its statute of limitations defense to the jury. As noted, the statute of limitations for civil ORICO claims under ORS 166.725(11)(a) is five years, but the action can be brought either five years "after the conduct in violation [of ORICO] terminates" or within five years after the action "accrues." Accrual occurs when plaintiffs "discovered or, in the exercise of reasonable diligence, should have discovered that they have been damaged and the cause of the damage." *Penuel*, 127 Or App at 200. That question is "normally a question for the jury unless only one conclusion can reasonably be drawn from the evidence." *Loewen v. Galligan*, 130 Or App 222, 236, 882 P2d 104, *rev den*, 320 Or 493 (1994) (stating same in context of the accrual of a securities claim). Having reviewed the record, we cannot say that a factfinder presented with the evidence could only find that plaintiffs' claims were timely under the ORICO statute of limitations. Defendant was prevented from raising its ORICO statute-of-limitations argument to the jury when the court ruled that a six-year statute of limitations applied. We conclude that that error was not harmless because we cannot say that there is "little likelihood that the particular error affected the verdict"; in other words, there is at least some likelihood that, had defendant been able to argue the five-year limitations period to the jury, it could have affected the jury's result. *Purdy v. Deere and Company*, 355 Or 204, 226, 324 P3d 455 (2014).

We turn to defendant's eighth assignment of error, in which it contends, among other things, that the trial court erred in instructing the jury on the definition of "pattern of racketeering activity" because the court omitted the concluding phrase "*and are not isolated incidents*" from the statutory definition. *See* ORS 166.715(4) ("'Pattern of racketeering activity' means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission * * * *and are not isolated incidents* * * *." (Emphasis added.)).

Although plaintiffs claim that there was no reversible error, it is at least undisputed that the trial court adopted plaintiffs' incomplete instruction over defendant's written objection. In light of our reversal on defendant's ninth assignment of error, we need not decide if that instruction amounted to reversible error. However, because we remand the case for further proceedings, we note that the trial court incorrectly instructed the jury by omitting the phrase "and are not isolated incidents" from the statutory definition.

C.  *Plaintiffs' Cross-Appeal*

Plaintiffs cross-appeal and assign error to the trial court's denial of their request for attorney fees. Plaintiffs sought their attorney fees under ORS 166.725(14), which provides that the court may award attorney fees to certain prevailing parties in an ORICO action. Because we reverse the judgment for plaintiffs on the ORICO claim, plaintiffs' arguments on cross-appeal, which are premised on their having prevailed on their ORICO claim, are now moot. Accordingly, we dismiss the cross-appeal.

### III.  CONCLUSION

In sum, we affirm the judgment in favor of plaintiffs on their fraud claim, reverse the judgment on plaintiffs' ORICO claim because the trial court erred in preventing defendant from raising their argument regarding the five-year limitations period to the jury, and dismiss plaintiffs' cross-appeal as moot.

On appeal, reversed and remanded as to plaintiffs' ORICO claim, otherwise affirmed; cross-appeal dismissed as moot.