***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted March 30, 2021, affirmed July 13, 2022

SARATOGA INVESTMENTS, LLC,
a Wyoming limited liability company,
dba Saratoga Forest Management, LLC,
*Plaintiff,*

*v.*

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,
a foreign corporation,
dba Ace Westchester; and
Ward Insurance Agency, Inc.,
an Oregon corporation,
dba Ward Insurance,
*Defendants.*

WARD INSURANCE AGENCY, INC.,
an Oregon corporation,
dba Ward Insurance,
*Third-Party Plaintiff-Appellant,*

*v.*

CONTINENTAL UNDERWRITERS, INC.,
*Third-Party Defendant-Respondent.*

Multnomah County Circuit Court
17CV42561; A171322

Thomas M. Ryan, Judge.

Syed S. Ahmad, Washington, D.C., argued the cause for appellant. On the opening brief were Cody Hoesly and Larkins Vacura Kayser LLP. Also on the reply brief were Cody Hoesly, Larkins Vacura Kayser LLP, and Geoffrey B. Fehling, and Hunton Andrews Kurth LLP, Washington, D.C.

James M. Callahan argued the cause for respondent. Also on the brief was Callahan & Shears, P.C.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

This appeal concerns the application of a contractual indemnity provision under Virginia law. Plaintiff Saratoga Investments, LLC (Saratoga), which owned a sawmill, sued its insurance agent, defendant Ward Insurance Agency, Inc. (Ward), for negligence and breach of contract after Saratoga was unable to fully recover its losses following a fire at its sawmill. Saratoga contended that those losses were caused by Ward's failure to obtain appropriate insurance coverage. Ward, as third-party plaintiff, then sued third-party defendant Continental Underwriters, Inc. (Continental), the wholesale insurance broker through which Ward obtained insurance coverage for Saratoga, for indemnification. Ward alleged that Continental was required to indemnify Ward for any claims brought by Saratoga because Continental had been negligent and had breached its standard of care as an insurance broker in failing to secure the appropriate insurance policy.

A jury ultimately awarded Saratoga over $2.2 million in damages on its claims against Ward. The jury then found that Ward did not prove its indemnification claim against Continental.

Ward now appeals, contending that the trial court erred in not granting it a directed verdict against Continental on Ward's indemnification claim.[1] Ward contends that the trial court had to direct a verdict because, considering the evidence, a factfinder had to find that Ward was entitled to judgment as a matter of law. Because we conclude that there were issues of fact for the jury to decide on the causation element of Ward's indemnification claim, we conclude that the trial court did not err. As a result, we affirm.

A full recitation of the facts would be of little benefit to the bench, bar, or public. Consistently with our standard of review, we summarize below some of the material facts that are necessary to understand the underlying indemnity dispute. We consider the evidence, and the reasonable inferences from that evidence, in the light most favorable to the

---

[1] Plaintiff Saratoga is not involved in this appeal.

party that obtained a favorable verdict—here, Continental. *Willms v. AmeriTitle, Inc.*, 314 Or App 687, 695, 499 P3d 79 (2021). We then determine whether Ward, as the moving party, was entitled to a verdict as a matter of law. *Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 245, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005). To prevail on its appeal from the trial court's denial of its motion for directed verdict, Ward must show that "there [was] no jury question concerning any essential element of [its] claim, that is, that [Ward was] entitled to judgment as a matter of law." *Id.* at 247. A directed verdict is appropriate "when there is no conflict in the evidence and it is susceptible of only one construction." *Malensky v. Mobay Chemical Corp.*, 104 Or App 165, 170, 799 P2d 683 (1990), *rev den*, 311 Or 187 (1991).

## I.   SUMMARY OF THE FACTUAL BACKGROUND

As noted, Saratoga owned a sawmill. Saratoga procured insurance through Ward, a retail insurance agency, for its insurance needs. In 2015, Saratoga sought to renew some of its property insurance, which included a request for business-interruption coverage. Generally speaking, business-interruption or business-income coverage is a type of insurance coverage that covers the loss of income when a business's premises are damaged by a covered cause of loss and the business suffers a resulting "slowdown or suspension of its operations." International Risk Management Institute, Inc., *Business Income Coverage*, https://www.irmi.com/term/insurance-definitions/business-income-coverage (accessed June 29, 2022).

Ward advised Saratoga regarding its insurance coverage. A Ward agent advised Saratoga that it should exclude the costs of Saratoga's "ordinary payroll," largely hourly wages paid to its mill workers, from covered insurance costs. The agent's belief was that, if there was business interruption due to a fire at the sawmill, the mill would lay off its hourly workers because there was no available work; Saratoga would not require coverage for those costs of doing business because it would not have those costs.

Ward then approached Continental, a wholesale insurance broker, seeking help with renewing Saratoga's property insurance. Ward sent Satatoga's application materials to Continental to put into the insurance market. When Continental sent Ward a proposal for coverage from an insurance company known as Ace Westchester (Westchester), the proposal did not include an appropriate endorsement necessary to exclude ordinary payroll from coverage. When Ward received the proposal, a Ward agent assumed that ordinary payroll had been excluded, consistent with its application. Ward then failed to confirm that the proposed Westchester policy had the appropriate endorsement excluding ordinary payroll. Ward, nevertheless, directed Continental to bind its client Saratoga to the Westchester policy. That failure to exclude Saratoga's ordinary payroll had a significant effect on the policy's coverage, although it is not necessary to spell out the detailed specifics of that effect in this opinion. Suffice it to say that, under the Westchester policy, which lacked the appropriate endorsement excluding ordinary payroll, Saratoga was significantly underinsured for its potential losses. For that reason, it was at risk for a significant coinsurance penalty in the event of a large loss.

That, however, was not the only mistake made in Saratoga's insurance application process. Ward had asked Continental to obtain a "1/6 monthly limit of indemnity option" for Saratoga's business-interruption coverage. Again, we do not intend to go into detail regarding this technical aspect of insurance coverage. The upshot is that, had Saratoga obtained coverage with a one-sixth monthly limit of indemnity, Saratoga may have had another way to avoid a coinsurance penalty. When Continental forwarded the application to Westchester, the file that included the request for a one-sixth monthly limit appeared to be in a corrupted format. Westchester emailed Continental that it had a problem opening that file. Continental did not follow up, but also assumed that Westchester had resolved this problem, because, just a few business days later, Westchester sent a quote for a policy renewal. Ward, for its part, again failed to check the proposed Westchester policy against the original application seeking the one-sixth monthly limit. Westchester

later issued a policy to Saratoga in September 2015 without the one-sixth monthly limit.

In 2016, one of Saratoga's sawmills sustained fire damage. Saratoga made a claim for insurance coverage with Westchester, but Westchester denied coverage for the full amount due to the policy's coinsurance penalty. In dealing with Westchester following its client's loss, Ward recognized that the way to solve the coverage issue was either "to have the [o]rdinary payroll exclusion endorsement or 1/6th monthly limit BI option added at inception." Accordingly, Ward asked Westchester to add, retroactively, the ordinary payroll exclusion endorsement to the policy. Westchester did not do so. Ward also asked Westchester to reform the policy to include the one-sixth monthly limit. Westchester refused that request because it had not received that part of the insurance application. Westchester stated that it would reform a policy if it had made a mistake or issued an incorrect policy but contended that it had issued the requested policy and made no mistake.

Ultimately, Saratoga was only able to recover approximately 53 percent of its losses through its Westchester insurance policy. Had the correct form been submitted and ordinary payroll excluded, Saratoga would have recovered an additional $967,001 in insurance. As a result, Saratoga sued Ward for breach of contract and negligence. Saratoga sought up to $3,000,000, which included the unpaid losses and consequential damages. Saratoga's complaint alleged that Ward was negligent because it failed to procure business-interruption coverage that would exclude ordinary wages or payroll expenses. It also alleged that Westchester failed to fully pay Saratoga's claim because "the policy it issued did not exclude ordinary payroll expenses" from Saratoga's business-interruption coverage. Importantly, Saratoga's complaint did not allege that its damages were caused by Ward's failure to obtain the one-sixth monthly limit of indemnity option. As noted above, Ward, as a third-party plaintiff, then sued third-party defendant Continental for indemnification.

Ward based its indemnification claim on a provision of an insurance brokerage agreement that existed between

Ward and Continental.[2] That agreement provides that it shall be governed by and construed in accordance with Virginia law. Both parties agree that Virginia law applies. The indemnification provision in the brokerage agreement provides, in relevant part, that:

> "[Continental] agrees to defend and indemnify [Ward] against and in respect of any and all claims * * *, demands, actions, proceedings, liability, losses, damages (except consequential damages), judgments, costs and expenses * * * suffered, made or instituted against or incurred by [Ward], and *which, directly or indirectly, arise out of or relate to* (i) negligence of [Continental] in discharging its obligations to [Ward] or to policyholders; or (ii) any failure by [Continental] to perform its obligations under or relating to this Agreement."

(Emphasis added.) Continental denied that it had any duty to indemnify Ward, and counterclaimed, contending that Ward had a duty to indemnify Continental.[3]

Saratoga pursued its contract and negligence claims against Ward to trial. Ward and Continental, in turn, pursued their indemnification claims against each other to trial. During the trial, Ward moved for a directed verdict on its contractual indemnification claim against Continental. Continental opposed, arguing, among other things, that the jury did not have to find that Saratoga's claims against Ward were caused by Continental's negligence or breach of its duties. Continental pointed out that Ward had not presented any evidence that Westchester would have quoted a one-sixth monthly option or that Saratoga would have purchased that policy.

The trial court denied Ward's motion for directed verdict. As noted above, the jury later found for Saratoga on

---

[2] Ward's third-party complaint asserted that its indemnification claim was supported by both common law and contractual theories. However, Ward's legal arguments at trial relied entirely on the brokerage agreement. Although the jury verdict only refers to an indemnification claim generally, Ward asserts that "the common law theory is not at issue" on appeal.

[3] The brokerage agreement had a nearly identical provision in which Ward agreed to indemnify Continental under similar conditions. Although the parties make arguments about the effect of the mutual indemnity provisions on their dispute, we need not reach them in light of our resolution below.

its breach of contract and negligence claims against Ward. The jury also found for Continental on Ward's indemnification claim against Continental.

## II.   ANALYSIS

Under Virginia law, "[a]n indemnification provision in an agreement is nothing more than a contract between parties to pre-determine the allocation of a potential risk of loss." *Farmers Ins. Exch. v. Enter. Leasing Co.*, 281 Va 612, 619, 708 SE2d 852, 856 (2011). Accordingly, a party to an indemnification agreement "is entitled to enforce the agreement according to its agreed terms." *Id.* Like any contract claim, an indemnity claim requires proof that a legally enforceable obligation existed between the parties, that the obligation was breached by one party, and that the breach "proximately caused" the other party's damages. *Doctors Co. v. Women's Healthcare Assocs., Inc.*, 285 Va 566, 575, 740 SE2d 523, 527 (2013).

We return to the relevant language of the indemnification provision. Ward contends that the relevant indemnification language is quite broad and requires that Continental indemnify Ward as to any claims or damages "which, directly or indirectly, arise out of or relate to" (1) Continental's negligence "in discharging its obligations" to Ward or to policyholders, or (2) "any failure" by Continental "to perform its obligations under or relating to this Agreement." We agree with Ward that the indemnification language is broad. However, that does not resolve our inquiry. This case reaches us on Ward's appeal from the trial court's denial of Ward's motion for a directed verdict on its contractual indemnification claim against Continental. The issue, therefore, is whether there is no jury question concerning any essential element of Ward's claim or, in other words, whether "there is no conflict in the evidence *and it is susceptible of only one construction*." *Malensky*, 104 Or App at 170 (emphasis added).

Having reviewed the record, including, but not limited to, some of the evidence summarized above, we conclude that the evidence is not susceptible of only one construction in Ward's favor. Of course, a jury could find—although it

ultimately did not here—that Saratoga's claims and damages arose either directly or indirectly out of Continental's negligence and breach of its contractual obligations, namely its failure to submit a readable form to Westchester seeking a one-sixth monthly limit of indemnity policy. However, the jury did not have to do so. Based on our review of the record, the jury could also have found that Saratoga's claims for damages against Ward arose entirely out of issues wholly unrelated to Continental's error, such as Ward's own negligence in, among other things, failing to exclude ordinary payroll from the insurance application.

Ward nevertheless contends that Continental's negligence and breach of contractual duties were the "sole reasons Westchester refused to reform the policy" and, therefore, that Ward is entitled to indemnification. However, Saratoga did not seek claims or damages based on Westchester's refusal to reform the insurance policy to include a one-sixth monthly limit. As Continental points out, Saratoga's operative complaint at trial focused on Ward's failure to exclude ordinary payroll from the business-interruption coverage and never even mentioned the issue of the one-sixth monthly limit. The jury certainly did not have to find that the sole reason for Saratoga's claims for damages against Ward arose directly or indirectly out of Continental's negligence in failing to forward the request for a one-sixth monthly limit of indemnity to Westchester in an uncorrupted document.

In sum, we conclude that a jury did not have to find for Ward on its indemnification claim. As a result, we affirm the trial court's denial of Ward's motion for directed verdict.

Affirmed.